```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
THE RITZ HOTEL, LIMITED,

                Plaintiff,              05 Civ. 00182 (MGC)

      - against -                       OPINION

SHEN MANUFACTURING COMPANY,
INCORPORATED,

                Defendant.
------------------------------------X

APPEARANCES:

        DORSEY & WHITNEY LLP
        Attorneys for Plaintiff
        250 Park Avenue
        New York, NY 10177

        By:  Lile H. Deinard, Esq.
             Bruce R. Ewing, Esq.

        PILLSBURY WINTHROP LLP
        Attorneys for Defendant
        1540 Broadway
        New York, NY 10036

        By:  Susan J. Kohlmann, Esq.
             Carolina A. Fornos, Esq.
             Nancy V. Thornton, Esq.

        HARDING EARLY FOLLMER & FRAILEY
        Attorneys for Defendant
        86 The Commons at Valley Forge East
        1288 Valley Forge Road
        P.O. Box 750
        Valley Forge, PA 19482

        By:  John F.A. Earley III, Esq.
             Frank J. Bonini, Jr., Esq.
             Charles L. Riddle, Esq.
```

**CEDARBAUM, J.**

Plaintiff The Ritz Hotel, Limited ("Ritz Hotel") seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, et seq., that by its use of certain marks containing the word "RITZ" in connection with particular products, it has not violated the trademark rights of, or unfairly competed with, defendant Shen Manufacturing Company, Incorporated ("Shen"). Shen has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or, alternatively, to transfer venue to the United States District Court for the Eastern District of Pennsylvania. For the following reasons, defendant's motion to dismiss is denied and the motion to transfer is granted.

BACKGROUND

Defendant Shen is a Pennsylvania corporation with its principal place of business in West Conshohocken, Pennsylvania. Shen manufactures a variety of kitchen textile products such as dish cloths, potholders and oven mitts, which it markets and sells through retail stores in the United States under the mark RITZ -- a designation for which it owns three United States trademark registrations, and which has been used for well over 100 years since the company began doing business as John Ritzenthaler Company in the late 1800s.

Plaintiff Ritz Hotel, a United Kingdom corporation, owns and operates The Ritz Hotel in Paris, France. It also markets and sells a variety of luxury goods under various marks such as RITZ PARIS, RITZ PARIS and Design, RITZ ESCOFFIER and THE RITZ KIDS, both directly and through third-party licensees. Among plaintiff's United States licensees are U.S. Foodservice, which distributes gourmet food products under the trademark RITZ ESCOFFIER, and Fabricut, Inc., which distributes luxury fabrics bearing the RITZ PARIS trademark for interior design applications.

For more than twenty years, the parties have been engaged in opposition proceedings before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("PTO"). In the proceedings currently pending before the TTAB, Shen seeks to block, and in some cases cancel, Ritz Hotel's registration of marks such as RITZ PARIS and RITZ ESCOFFIER for goods like food products, bed linens and furniture on the ground that the marks are likely to cause confusion among consumers. Ritz Hotel alleges in its complaint that during the course of discovery before the TTAB in late 2004, counsel for Shen called counsel for Ritz Hotel and claimed to have learned for the first time about sales of certain Ritz Hotel products in the United States. The complaint further alleges that Shen "advised" Ritz Hotel that, in light of this discovery, Shen "was contemplating

filing an infringement" action.  In his declaration in opposition to Shen's motion to dismiss, Bruce R. Ewing, counsel for Ritz Hotel, describes the November 30, 2004 conversation with Shen's counsel as follows:

> Mr. [John F.A.] Earley told me that Shen had not known previously that The Ritz Hotel was shipping various tableware products under its RITZ PARIS trademark into the United States for distribution and sale.  He also stated that Shen had not previously known that The Ritz Hotel had licensed a third-party to sell fabrics under the RITZ-PARIS trademark, and that sales of RITZ-PARIS fabrics were already taking place in the U.S.  Mr. Earley stated that his client viewed these "new" developments as being of such significance that Shen was planning to commence an infringement action in federal district court based on this information.  However, he added that his client hoped to resolve its longstanding dispute with The Ritz Hotel through a settlement without the need for infringement litigation, and he invited The Ritz Hotel to make Shen some sort of settlement proposal.

(Footnote omitted.)  Although the parties had previously engaged in settlement talks over the course of their twenty-year dispute before the PTO, Ewing states that "Shen had never before given any indication that it planned to commence infringement litigation against The Ritz Hotel."

On December 2, 2004, Ewing sent a letter to Earley confirming his understanding of the November 30, 2004 telephone conversation, stating that "[y]ou indicated that your client was planning to initiate an infringement action in federal district court," but that it "might also consider a renewed effort to resolve this long-running dispute between our clients once and for all."  Ewing further indicated in the letter that his co-counsel, Lile Deinard, had been in touch with their client, and that they would soon let Earley know how they planned to proceed.  According to Ewing's declaration, while Ritz Hotel decided to try to settle the dispute, it at the same time authorized the preparation of a declaratory judgment complaint to be filed in the event discussions failed.

On January 6, 2005, Ewing and Deinard called Earley back with a settlement offer from Ritz Hotel.  Ewing's account of the conversation is as follows:

4

> Mr. Earley reiterated that Shen might file a trademark
> infringement suit against The Ritz Hotel if the parties
> could not resolve their dispute, although he also
> stated that his mention of a possible lawsuit was not
> intended as a threat. For our part, Ms. Deinard and I
> reiterated a settlement proposal made previously by The
> Ritz Hotel to Shen as part of an effort to resolve this
> dispute, but Mr. Earley said that he doubted Shen would
> find the proposal to be of interest. Ms. Deinard and I
> asked Mr. Earley to get back to us by 11:00 a.m. on
> January 7th if his client had any interest in
> continuing the discussions, and the call ended.

When Earley did not call back by the appointed time the next morning, Ewing and Deinard "took [that] to mean that [Shen] was not interested in discussing the matter any further," and proceeded to file the declaratory judgment complaint that afternoon.

Shen disputes Ewing's account of the November 30, 2004 and January 6, 2005 telephone conversations, and specifically denies the allegation that Shen threatened to sue Ritz Hotel for trademark infringement. Earley submitted two declarations in support of Shen's motion to dismiss, in which he states that the purpose of his initial call to Ewing on November 30, 2004 was to explore settlement of the parties' long-standing dispute: "I stated that before discussing the possible ramifications of the confidential evidence [recently produced in discovery] with Shen I thought it would be worthwhile to explore settlement before the dispute possibly escalated further in view of the potential for a trademark infringement action." Shen argues that even if Ewing initially misinterpreted this statement as a charge of infringement, Earley clarified any misconception during the second telephone call, before Ritz Hotel filed suit. According to Earley:

> I made it clear at the start of the [January 6, 2005]
> conversation that I had called Mr. Ewing on November
> 30, 2004 to explore settlement. . ., before the dispute
> between the parties possibly escalated into litigation.
> In that conversation I made it clear to Plaintiff's
> counsel that I did not state that Defendant was
> contemplating an infringement action. I also made it
> clear to Plaintiff's counsel that I wanted to talk to
> them about settlement before discussing with Shen the
> possible ramifications of the confidential evidence. I
> then discussed settlement with Plaintiff's counsel in
> that conversation.

5

Earley further states that while Deinard did make a settlement offer on behalf of Ritz Hotel, it was unacceptable to Shen because the terms "were far less beneficial to Shen than the terms of a prior offer made by" Ritz Hotel.  Earley did not call Deinard on January 7, 2005 because "it did not appear that [Ritz Hotel] was negotiating in good faith, and any counter-offer by Shen appeared to be a waste of time."

Because the declarations submitted by Ewing and Earley presented conflicting accounts of the discussions leading up to the filing of the complaint in this case, I held an evidentiary hearing on April 29, 2005 to determine whether the controversy between the parties was of sufficient immediacy to constitute a case or controversy.  Significantly, although each attorney was present at the hearing, neither Ewing nor Earley testified under oath about the November 30, 2004 and January 6, 2005 telephone conversations.  Shen presented the only witness at the hearing, Robert M. Steidle, Shen's Vice President and Chief Financial Officer.

Steidle testified that he has handled trademark matters for Shen for the past five or ten years, and that no one at the company ever made a decision to file, or ever discussed filing, a trademark infringement lawsuit against Ritz Hotel.  Steidle further testified that, win or lose, Shen is prepared to accept the PTO's ruling on the matters before it, and that "based upon the circumstances as they exist today," Shen does not intend to file a trademark infringement suit against Ritz Hotel or any of its licensees.  When asked what potential change in circumstances might cause him to change his mind, however, Steidle "couldn't speculate," and indicated "there are many, many circumstances that could change the nature of the market."  "I don't think I can rule out anything," Steidle testified.  "I think anything is possible."

DISCUSSION

I.   Subject Matter Jurisdiction

The Declaratory Judgment Act permits a federal court, "[i]n a case of actual controversy," to "declare the rights . . . of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  In determining whether an "actual controversy" exists, "the question we must ask is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'"  Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)) (alteration in original); accord Starter Corp. v. Converse, Inc., 84 F.3d 592, 594-95 (2d Cir. 1996).  "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis."  Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991).

The Second Circuit has articulated a two-pronged test for determining the existence of an actual controversy in declaratory judgment cases involving trademarks.  First, the defendant's conduct must have "created a real and reasonable apprehension of liability on the part of the plaintiff."  Starter, 84 F.3d at 595.  Second, the plaintiff must have "engaged in a course of conduct which has brought it into adversarial conflict with the defendant."  Id.  Both elements must exist at the time the declaratory judgment action is filed.  Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988); BP Chems. Ltd. v. Union Carbide Corp., 757 F. Supp. 303, 304 (S.D.N.Y. 1991), aff'd, 4 F.3d 975 (Fed. Cir. 1993);[1] see also Starter, 84 F.3d at 595 (deciding "whether, at the time the complaint was filed, an actual case or controversy existed").  Because "[d]eclaratory judgment actions are particularly useful in resolving trademark disputes," the Second Circuit has instructed that "the finding of an actual controversy should be determined with some liberality."  Starter, 84 F.3d at 596; see also Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 504 (2d Cir. 1968) (noting in patent context that case law substantiates the view that "the requirement that there has been a 'charge of

---

[1]   Although Arrowhead and BP Chemicals are, like other cases cited, patent cases, "[d]eclaratory judgment actions involving trademarks are analogous to those involving patents, and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks."  Starter, 84 F.3d at 596 (citations omitted).

7

infringement' has been given a very liberal interpretation" (citation omitted)).

Because neither Earley nor Ewing testified at the evidentiary hearing about their November 30, 2004 and January 6, 2005 conversations, I had no opportunity to assess their credibility and resolve the factual dispute presented by their respective accounts. It is significant, however, that Earley concedes in his declaration that although he had not yet "discuss[ed] the possible ramifications of the confidential evidence with Shen," he did mention "the potential for a trademark infringement action" in his initial conversation with Ewing on November 30, 2004. In the light of the Second Circuit's broad interpretation of reasonable apprehension of being sued, see Muller, 404 F.2d at 504-05, although it is a close question, I conclude that Ritz Hotel has satisfied the Starter test. See also EMC Corp. v. Norand Corp., 89 F.3d 807, 812 (Fed. Cir. 1996) (finding reasonable apprehension where the "most telling evidence" was a letter "referr[ing] to [defendant's] inclination to 'turn the matter over to' [its] litigation counsel 'for action,' and urg[ing] a 'preliminary business discussion,' 'perhaps avoiding this matter escalating into a contentious legal activity'"); Mfrs. Hanover Corp. v. Maine Savings Bank, 225 U.S.P.Q. 525, 526-27 (S.D.N.Y. 1985) (finding reasonable apprehension of liability where defendant, prior to filing a formal opposition to plaintiff's application for trademark registration, sent letter stating plaintiff's mark might create likelihood of confusion and that while defendant wanted to resolve the matter informally, it followed an "aggressive" policy to protect the value of its marks that occasionally required the initiation of formal legal proceedings).[2]

Shen argues that "[t]he Court need look no further than [Steidle's] statement that Shen has no intention to file a trademark suit against the Plaintiff" to determine that Shen's conduct has not created a real and reasonable apprehension of liability on the part of Ritz Hotel. However, I conclude that Steidle's testimony -- elicited after the complaint was filed in this case -- does not moot the actual controversy that existed at the time the action was commenced. Although Steidle testified

---

[2] In Shen's supplemental brief filed after the evidentiary hearing, it argues that because Earley's alleged charge of infringement pertained only to certain products, an opinion regarding plaintiff's rights to use its marks on the other goods enumerated in plaintiff's complaint would be advisory. However, in light of Earley's proposal that the parties discuss settling their "long-standing dispute," it was reasonable for Ritz Hotel to apprehend an equally broad lawsuit when those discussions failed.

8

that Shen does not presently intend to file a trademark infringement lawsuit against Ritz Hotel or any of its licensees, he conceded that there were circumstances under which Shen might decide to bring a lawsuit in the future without clearly articulating the factors that might influence such a decision. Because this is not a case "where the defendant has 'entered into a binding, judicially enforceable agreement'" not to sue, <u>Kidder, Peabody</u>, 925 F.2d at 563 (citation omitted), the actual controversy is still alive. <u>See</u> <u>id.</u> at 562-63 (holding case was not moot where, in settlement discussions with plaintiff before suit was filed, defendants had identified federal securities claims among potential causes of action, but subsequently made numerous post-filing representations to the court that they would never assert such claims); <u>Fina Research, S.A. v. Baroid Ltd.</u>, 141 F.3d 1479, 1483-84 (Fed. Cir. 1998) (holding that letter written after commencement of suit in which defendant stated it "has not and does not make any claim of infringement against [plaintiff]" was, without the necessary covenant not to sue, insufficient to moot the reasonable apprehension that earlier letters engendered).

II. <u>Venue</u>

Shen seeks in the alternative to transfer this case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is undisputed that the Eastern District of Pennsylvania has personal jurisdiction over the defendant and is a forum in which venue is proper. Shen is incorporated in Pennsylvania and has its principal place of business there.

The decision whether to grant a motion to transfer venue "'requires a balancing of conveniences, which is left to the sound discretion of the district court.'" <u>Societe Generale v. Florida Health Sciences Ctr., Inc.</u>, No. 03 Civ. 5615 (MGC), 2003 WL 22852656, at *7 (S.D.N.Y. Dec. 1, 2003) (quoting <u>Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.</u>, 865 F.2d 513, 520 (2d Cir. 1989)). Among the factors a court should consider are plaintiff's choice of forum, the convenience of the witnesses and parties, the location of events giving rise to the suit, the relative ease of access to sources of proof, a forum's familiarity with the governing law, and trial efficiency. <u>Giuliani, S.p.A. v. Vickers, Inc.</u>, 997 F. Supp. 501, 503 (S.D.N.Y. 1998). Defendant bears the burden of demonstrating that the relevant factors weigh strongly in favor of transfer. <u>Societe Generale</u>, 2003 WL 22852656, at *7.

9

The relevant factors in this case weigh strongly in favor of transfer to the Eastern District of Pennsylvania. While a plaintiff's choice of forum is generally entitled to substantial weight, that choice is accorded less deference when, as here, a plaintiff brings suit outside its home forum, Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 349 (S.D.N.Y. 1988), and the action is one for a declaratory judgment, an action in which plaintiff's "posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief," Societe Generale, 2003 WL 22852656, at *7.

Additionally, the convenience of the parties and witnesses as well as access to sources of proof would be greater, on balance, were this case to proceed in Pennsylvania. Although Shen has a showroom in New York City, the showroom is currently unstaffed. Shen has no employees in New York, and its corporate headquarters are located in West Conshohocken, Pennsylvania. Vice President Steidle and other company officers familiar with trademark matters at the company -- individuals that counsel have indicated are likely witnesses at trial -- are also located in Pennsylvania. Shen's corporate documents and business records, including sales records and product specimens, are housed at Shen's corporate headquarters, and plaintiff's attorneys have previously undertaken discovery there in connection with the PTO proceedings. By contrast, Ritz Hotel is a United Kingdom corporation based in Paris, France, with no offices and no employees in the United States. While there may in fact be many more direct flights to New York City from Paris on a daily basis than there are to Philadelphia, as plaintiff contends, plaintiff's witnesses who live abroad will be only marginally more inconvenienced, if at all, by traveling to Philadelphia rather than New York.

Ritz Hotel argues that the Southern District of New York "is the center of its U.S. business." Its sales to New York retailers like Michael C. Fina and individual consumers may in a trademark infringement action establish a sufficient connection to this district, see Toy Biz, Inc. v. Centuri Corp., 990 F. Supp. 328, 331 (S.D.N.Y. 1998), however many of the other activities plaintiff points to in support of this proposition are irrelevant to the action -- namely, that it engaged a sales and marketing representative in Fairfield, Connecticut to promote its hotel services in New York; that it previously litigated trademark infringement actions with other parties in this district; and that it has retained New York counsel, a factor not considered in the transfer analysis, Marshall Gobuty Int'l USA, Inc. v. Nike, Inc., No. 04 Civ. 6975 (SAS), 2004 WL 2578912, at *2 (S.D.N.Y. Nov. 10, 2004); Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp.2d 433, 438 (S.D.N.Y. 2000). Similarly, it is unclear how the fact that plaintiff engaged a

New York licensing agent to negotiate the Fabricut and U.S. Foodservice licenses in 2000 is relevant to choice of forum, particularly since the licensees themselves are not located in New York.

Finally, although Ritz Hotel seeks a declaratory judgment on issues of both state and federal law, it does not specify which state's law applies. Thus, the court's familiarity with governing law is a factor that is neutral in the transfer analysis.

On balance, the relevant factors weigh strongly in favor of transfer to the Eastern District of Pennsylvania. This is not a case in which transfer of venue will "merely shift the burden of inconvenience from one party to the other." Invivo Research, 119 F. Supp.2d at 438. Accordingly, Shen's motion to transfer this action to the Eastern District of Pennsylvania is granted.

CONCLUSION

For the foregoing reasons, Shen's motion to dismiss the complaint for lack of subject matter jurisdiction is denied, and its motion to transfer venue to the Eastern District of Pennsylvania is granted. The Clerk of the Court is directed immediately to transfer all papers in this case to the United States District Court for the Eastern District of Pennsylvania without waiting for the expiration of the five day period

prescribed by Local Civil Rule 83.1.

SO ORDERED.

Dated:   New York, New York
         August 22, 2005

                                   S/ _____
                                       MIRIAM GOLDMAN CEDARBAUM
                                       United States District Judge